UNITED STATES *v.* SCHWARTZ & CO. (No. 601).[1]

STATEMENT:

The cotton bagging of the importation was classified and assessed at the appropriate rate as bagging for cotton composed of jute, jute butts, or hemp under paragraph 355, tariff act of 1909. It is here undisputed, in fact agreed on, that the importation is a manufacture of vegetable fibers not specially provided for, and it is here conceded to have been dutiable at a higher rate under paragraph 358 of the act in question. The importer appealed against the assessment of the lower rate, and the board assessed the higher rate. The Government contends the importer may not appeal where he has suffered no pecuniary loss.

IMPORTER'S RIGHT TO PROTEST A RATE AS TOO LOW.

The statute, June 10, 1890, gives the importer the right of appeal if "dissatisfied" with the collector's decision. The collector's decision is not final and conclusive against the Government, and under the statute is not to be deemed final and conclusive against the importer. An appeal would have for its object the judicial ascertainment and enforcement of the lawful rate for the just protection of the parties to the proceedings, of the importer as well as of the Government. A review of the legislation and of the judicial constructions the pertinent clause of the statute has received, sustains the right of the importer to appeal. He has a right to have his merchandise correctly assessed.—De Blois & Ballut, G. A. 2413 (T. D. 14691); Wakem *v.* United States (T. D. 25827).

United States Court of Customs Appeals, March 12, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7187 (T. D. 31401.)

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellees imported into this country certain 500 rolls of bagging for use in baling cotton.

---

[1] Reported in T. D. 32315 (22 Treas. Dec., 390).

The collector classified the importation as bagging for cotton, composed of jute, jute butts, or hemp, falling within the classification established by paragraph 355 of the act, and duty was accordingly assessed thereon at the rate of six-tenths of 1 cent per square yard.

It is now conceded of record by both parties that this classification was erroneous, for the reason that the bagging in question was not composed of jute, jute butts, or hemp, and was not governed by paragraph 355, and duty should not have been assessed upon the importation under that paragraph. It is also conceded that the importation in fact and law properly came within the terms of paragraph 358 of the act, as manufactures of vegetable fibers not specially provided for, and was dutiable at 45 per cent ad valorem as therein provided.

The importers filed a protest against the classification and assessment thus erroneously made by the collector, contending that the importation was dutiable at 45 per cent ad valorem under paragraph 358, or alternately at 20 per cent ad valorem as nonenumerated manufactured articles, or at 10 per cent ad valorem as nonenumerated unmanufactured articles, under paragraph 480. The assessment of 45 per cent ad valorem, as first claimed in the protest, would impose a greater duty upon the importation than the rate actually assessed. However, that rate was the correct one, and was the real contention of the importers.

The protest came on to be heard by the Board of General Appraisers. The Government thereupon filed a motion to dismiss the case on the ground that the protest contended for a higher rate than the one actually assessed by the collector, and that the importers had no right to appeal to the board in such a case. This motion was overruled; and upon consideration the board sustained the protest, holding the importation to be dutiable at the higher rate claimed by the importers, and ordering a reliquidation accordingly.

A somewhat unusual record is thus presented for review, which may be briefly recounted.

In the first place, the importation was erroneously classified and assessed by the collector; thereupon the importers protested, claiming a rate of duty higher than that actually assessed; upon appeal the board held the higher rate to be the lawful one and ordered the collector to receive the larger duty thus virtually tendered by the importers. The Government then appealed from this decision, no longer, however, asserting the correctness of the rate assessed by the collector, and not now denying the correctness of the classification and assessment adjudged by the board, but simply claiming that the board had no jurisdiction to entertain the appeal because of the fact that the rate claimed by the importers was higher than that actually assessed by the collector.

As may be seen from the foregoing statement, the sole question which is now presented in the case is whether or not the importers had the right to appeal to the board from the collector's assessment notwithstanding the fact that their protest proposed a rate of duty higher than the assessed one.

Prior to the act of June 10, 1890, the subject of appeals from decisions of collectors was controlled by section 14 of the act of June 30, 1864 (13 Stat., chap. 171). That section provided that the decisions of the collector as to the rate and amount of duties should be final and conclusive against all persons interested therein, unless the importer or his agent, if dissatisfied with such decision, should within 10 days give notice in writing to the collector, setting forth therein distinctly and specifically the grounds of his objection thereto, and within 30 days appeal from such decision to the Secretary of the Treasury. It was provided that the decision of the Secretary upon such appeal should be final and conclusive, unless suit was brought within 90 days thereafter for any duties paid in conformity with such decision. It was also provided that no suit should be maintained in any court for the recovery of any duties alleged to be erroneously or illegally exacted until the decision of the Secretary of the Treasury should first be had upon such appeal, unless the decision of the Secretary thereon should be delayed beyond certain prescribed periods.

Whether the Secretary was invested by this act with authority to entertain appeals upon protests claiming a higher rate than that assessed need not now be considered. In any event, such a protest, whether as an appeal under the statute or as a mere complaint apart from it, might be addressed by an importer to the Secretary and ruled upon by him; and such ruling would at least have had the effect of a direction to the department. However, the provisions for such appeals were radically altered by Congress by the act of June 10, 1890, and the terms of that act, as subsequently amended, must furnish the rules which control the present issue.

By the act of June 10, 1890 (26 Stat., chap. 407), it was provided by section 12 that "nine general appraisers of merchandise" should be appointed who "shall be employed at such ports and within such territorial limits as the Secretary of the Treasury may from time to time prescribe, and are hereby authorized to exercise the powers and duties devolved upon them by this act, and to exercise, under the general directions of the Secretary of the Treasury, such other supervision over appraisements and classifications, for duty, of imported merchandise as may be needful to secure lawful and uniform appraisements and classifications at the several ports."

Section 14 of the same act provided, in brief, that the decision of the collector as to the rate and amount of duties chargeable upon

imported merchandise should be final and conclusive against all persons interested therein, unless the importer or his agent should, within 10 days thereafter, *if dissatisfied with such decision*, give notice in writing to the collector setting forth therein distinctly and specifically the reasons for his objection thereto, and if the merchandise be entered for consumption, should pay the duty as thereon assessed, whereupon the collector should transmit the files and exhibits to the board of three general appraisers then on duty at the port of New York or to such board as might be designated by the Secretary of the Treasury, and such board should "examine and decide the case thus submitted." By the present act the board is given "full power to hear and determine all cases and questions arising therein or assigned thereto * * *; and shall have all the jurisdiction and powers and proceed as now, heretofore, and herein provided." Other amendments also to the act above cited have since been enacted, which, however, do not essentially affect the present question, and they do not seem at present to require specific mention in this connection. The foregoing provisions, therefore, are, in substance, the law governing this case.

As is stated above, the importer is given the right to appeal to the board from the decision of the collector *"if dissatisfied"* with that decision; and in the present case the importers undertook to exercise such a right. If the words of the act are taken in their ordinary meaning there can be no doubt that the importers had the right to appeal in this case, because within the usual meaning of the word the importers were "dissatisfied" with the decision of the collector. However, it is contended by the Government that the right to appeal upon a protest is allowed only in cases where the duty proposed by the importers is lower than that assessed by the collector, and that the word "dissatisfied" is limited by construction to such cases only. It is accordingly contended that an importer can not be "dissatisfied" with an assessment unless he suffer a pecuniary loss because of it; and that the importers in this case, therefore, did not come within such description because the assessed rate was less than the rate for which they contended. Upon this assumption the attempt of the importers to perfect such appeal was nugatory, and the board lacked jurisdiction for want of necessary parties to entertain it; and the decision of the board was therefore necessarily erroneous and reversible.

It thus appears that the single ultimate question presented by the record is whether or not the importers came within the description "dissatisfied" within the meaning of the above-cited provision for appeals. If they came within that description they had the right to appeal; otherwise they had no such right.

In coming to a conclusion upon this question it is important to observe that the foregoing provisions do not make the collector's

decision as to the rate and amount of duty final and conclusive upon the Government. A reliquidation by the collector at any future time is not forbidden, although the act of June 22, 1874 (18 Stat., 190, sec. 21), limits the exercise of this right of reliquidation, in the absence of fraud, to one year next following the original liquidation. This fact greatly favors the construction that the importers are entitled to an appeal in case of an erroneous classification and assessment, even if lower than the correct one, because such assessment may at any time within a year be reliquidated by the collector. If such reliquidation be made within the year an action may be begun against the importers at any time thereafter for the balance due upon the reliquidation. The payment by the importers of insufficient duty thus erroneously assessed by the collector upon their importations does not of itself effectuate a final discharge of their obligation to the Government. Therefore, in cases wherein they are convinced that the assessed rate is illegally low, or indeed in cases in which there is extreme doubt as to the correct rate, the importers, for their own safety, should be given the right to submit the question by appeal to the proper tribunals for a final decision. The practical importance of such a right to the importers in certain cases must be obvious, and must of course have received proper legislative consideration. It is reasonable to believe, therefore, that the section in question was intended to cover such cases, as well as those cases in which the collector's assessment may be regarded by the importer as too high. In either case the object of an appeal is simply to have the lawful rate of duty judicially ascertained and enforced for the just protection of both parties to the proceedings. And this view is supported by the terms of the act above cited defining the duties of the general appraisers, parts of which are here repeated:

They shall be employed at such ports and within such territorial limits as the Secretary of the Treasury may from time to time prescribe, and are hereby authorized to exercise the powers and duties devolved upon them by this act, and to exercise under the general direction of the Secretary of the Treasury such other supervision over appraisements and classifications, for duty, of imported merchandise as may be needful to secure lawful and uniform appraisements and classifications at the several ports.

In view of the conflicting arguments concerning the word "dissatisfied," it becomes important to review the interpretations which have been placed by the board and the courts upon the disputed term, with the especial purpose of learning how far such interpretation must have become known to Congress and been impliedly adopted by subsequent legislation.

Within a few years after the passage of the act of June 10, 1890, in the case of De Blois & Ballut, reported as T. D. 14691, January, 1894, this identical question was decided by the board. The importa-

tion in that case had been classified as manufactures of straw and assessed with duty as such at 30 per cent ad valorem. The importers protested, claiming the goods to be manufactures of cotton dutiable at 40 per cent ad valorem. The board sustained the protest and said:

> The appellants in their notice of dissatisfaction with the collector's decision claim in the alternative that said goods are dutiable at 40 per cent ad valorem under paragraph 355. This claim would seem to be well founded, and notwithstanding the fact that the rate of duty claimed by the importers to be applicable to the merchandise is greater than that assessed thereon by the collector, we feel constrained to sustain the protest and authorize the collector to reliquidate the entry accordingly.

The merchandise imported in the foregoing case had been entered under the act of 1890. This decision was apparently acquiesced in; at least there is no reported review of the case on error.

In the case of T. Reissner (T. D. 23471, January, 1902), the board considered a case in which the collector held the importation to be wholly exempt from duty. The importer, however, contended that such goods were dutiable at 45 per cent ad valorem, and his protest was filed to that effect. The board entertained jurisdiction of the case, but held nevertheless that the collector's ruling was correct and that the importation was free. The board expressed doubt as to the right of an importer to protest in such a case, in the following words:

> There is also some doubt whether such a protest as that now under consideration can properly be entertained at all, for it may be seriously questioned whether a party importing goods which are admitted to free entry can legally take exception to the action of the Government officer which presumptively does him no injury.

In the case of Wakem & McLaughlin (T. D. 24723, decided by the Board of General Appraisers in October, 1903), the importation had been classified as lithographic prints dutiable at 20 cents per pound. The importers protested, claiming the goods to be dutiable at 50 cents per pound as metal-leaf lithographs. The board referred to the doubts expressed in the case next above cited, but nevertheless proceeded with a decision of the case upon the merits. The protest was found to be not well taken, and was overruled. This case was thereupon taken to the United States Circuit Court, Northern District of Illinois, and reported as Wakem *v.* United States (T. D. 25827, October, 1904). The court sustained the appeal of the importers, and also sustained their contention upon the merits, thus necessarily approving the right of appeal claimed by the importers in the present case. As part of its order the court adjudged the importers to pay the additional duty required of them according to law.

In T. D. 31017 (case of G. W. Sheldon & Co., decided by the board October, 1910), the board followed almost without comment the rule laid down by the decision just above cited.

It may be repeated that the act first establishing the Board of General Appraisers and defining its jurisdiction was enacted on June 10, 1890. In January, 1894, the board reported the first decision above cited sustaining the importer's right to an appeal in such a case as the present one. In August, 1894, was enacted the general tariff act of that year. It may well be claimed that the foregoing important decision of the board was not overlooked by Congress; but the new act contained no new provision upon that subject. The former administrative act, which was construed by the board in the cited case, was not amended nor even reenacted. It remained upon the statutes as the act of June 10, 1890.

In the act of July 24, 1897, whereby a general revision of the tariff was effected, no amendment was enacted upon the subject now in hand. Section 32 of that act amended the provisions of sections 7 and 11 of the administrative act, but those sections did not relate to the subject of appeals. It may be said, however, that the earlier act was before Congress, and was amended in those particulars which in the legislative judgment required amendment.

On May 27, 1908, Congress passed an act entitled "An act to amend an act entitled 'An act to simplify the laws in relation to the collection of the revenues,' approved June tenth, eighteen hundred and ninety, as amended by the act entitled 'An act to provide revenues for the Government and to encourage the industries of the United States,' approved July twenty-fourth, eighteen hundred and ninety-seven." (35 Stat., 403, chap. 205.)

By this enactment section 14 of the original administrative act was reenacted, being the section containing the provisions in controversy, altered, however, so as to increase the time for protest from 10 to 15 days; also allowing rehearings by the board, and permitting the board to establish rules of practice not inconsistent with law. Obviously the entire subject of appeals from the collector to the board was considered by Congress, but no amendment was enacted which related to the subject now at bar.

By the tariff act of August 5, 1909, this court was established. The administrative act was reenacted as section 28 of that law. Section 14 of the administrative act, now numbered subsection 14 of section 28, was amended by the substitution of the name of this court for the Circuit Court in the provision for appeals from the board, but no amendment was enacted relating to the subject now under review.

The decisions of the board above cited expressed doubt as to the right of importers to appeal from a ruling of the collector assessing too low a duty or admitting to free entry merchandise which was lawfully dutiable, but this doubt was resolved by the board in favor of the importers, and their claim to an appeal was sustained. And not-

withstanding the reported decisions allowing such appeals no amendment appeared in any of these enactments designed to change the rule. It is perhaps permissible to say that the very fact that the board had expressed doubt concerning the ruling in question would tend the more certainly to direct legislative attention to the subject upon a reenactment of the administrative act. In all kinds of legislation substantial weight is given to such implied legislative adoption of judicial interpretations of preceding statutes, and in tariff legislation that rule must of necessity be given unusual force. It may fairly be said, therefore, that the courts adopted the broader interpretation for the phrase "if dissatisfied," and Congress approved such interpretation by its subsequent failure to change the construction upon which it was founded.

These considerations lead the court to the conclusion that the importers in this case were within their rights when they protested against the collector's classification; and that the board was within its jurisdiction when it sustained their protest.

It must of course be apparent that the decision of the board should be affirmed unless it was totally void for want of jurisdiction. It is conceded that the decision was correct respecting the duty which should have been assessed upon the importation; and that the appellant profited by the decision because the duty adjudged to it thereby was in excess of that claimed by it. Therefore appellant can have, under these conceded circumstances, no right to invoke the appellate jurisdiction of this court and move this court to action in its behalf, save only upon the ground that the decision of the board was a nullity, and should be reversed in order that it may not be suffered to retain even a formal appearance of authority.

Inasmuch, however, as the board's decision was not a nullity, and inasmuch as its correctness upon the merits of the single other question involved is conceded, it should be, and is, *affirmed.*

### CONCURRING OPINION.

MONTGOMERY, Presiding Judge, concurring: I agree with the conclusion reached in this case by my brother Martin. The importance of the question involved makes it proper that I should state at some length my reasons for concurrence.

Conceding that the requirement, justifying an appeal by an importer to the Board of General Appraisers, that he shall be dissatisfied with the classification adopted by the collector implies that such dissatisfaction shall arise out of a reasonable apprehension of injury to the interests of such importer, and that this would exclude a mere captious sentiment of dissatisfaction, I think it is still true that, as shown both by the opinion of the Board of General Appraisers and by the opinion of Judge Martin, a valid reason may exist why

an adjudication as to the rate of duty may be a pecuniary advantage to the importer even though the rate which he seeks to have applied is greater than that which is adopted by the collector.   As is well said in the opinion of General Appraiser Somerville, in deciding the present case:

We might suppose a case of an importer dealing in goods which have been erroneously classified at a lower rate of duty making large contracts based upon their future sale; and being subsequently brought to financial ruin by a change in such classification liable to occur by the mutation in office of public officials holding different views.

In the absence of any authoritative determination by the Board of General Appraisers or the courts as to the proper classification of an importation, a reliquidation may occur at any time within one year. As a practical proposition, therefore, affecting the pecuniary interest of the importer, it may be of exceeding importance that the correct classification be ascertained by judicial determination, and he may, in a legal sense, be dissatisfied with any other classification.   This reasoning presupposes that the decision of the Board of General Appraisers upon an appeal in a classification case is final and conclusive upon the Government as well as upon the protestant and prevents reliquidation in the same case.   That such is the effect of the decision of the board I entertain no doubt.   The Board of General Appraisers is in classification cases a judicial tribunal and nothing else.   Its decisions are open to review by this court.   It is provided in terms by subsection 12 of section 28 that—

Each of the boards of three general appraisers, or a majority thereof, shall have full power to hear and determine all cases and questions arising therein or assigned thereto.

And by subsection 14 it is provided:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise * * *, shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise * * *, shall, within fifteen days after but not before such ascertainment and liquidation of duties * * *, give notice in writing to the collector * * *. Upon such notice and payment the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers, for due assignment and determination as hereinbefore provided; such determination shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such, who shall liquidate the entry accordingly, except in cases where an application shall be filed in the United States Court of Customs Appeals within the time and in the manner provided for in this act.

This language is plain and unambiguous.   In construing another section of the Federal statutes the court, in United States v. Phelps (17 Blatch., 312; 27 Fed. Cas., No. 16039), considered the words "final and conclusive upon all parties" as broad enough to include the United States.   This case was followed upon this point in United States v. Leng (18 Fed. Rep., 15), in the well-considered and able opinion by Judge Brown, in which the distinction is pointed out

between a provision of the statute making action conclusive only upon the owner, importer, etc., by the phrase "persons interested in the goods" and the provision "final and conclusive upon all parties." It is true the language of this section differs slightly, the language being "it shall be final and conclusive upon all persons interested therein." But as the collector of customs or the Secretary of the Treasury in his respective official capacity is the other party to the litigation, he is as such person acting in that capacity interested in the result of the litigation. The very language following shows the sense in which the word person is used: "The record shall be transmitted to the proper collector or person acting as such," showing that in the same clause the word person is referred to as including the official who is representing the Government.

But were this section silent as to the force and effect of the decision, the rule of law which makes conclusive and final the decision of any tribunal to which is committed the duty of determining a question between parties would control, as is clearly pointed out in the opinion in United States *v.* Leng, *supra,* and by the opinion of General Appraiser Somerville in the present case. It is inconceivable that, in a case where, by the statute creating the tribunal, parties in interest are invited to submit to that tribunal for decision the question as to whether an importation is dutiable under a particular paragraph of the tariff law, and that submission is had and a decision rendered after full consideration by the judicial tribunal, the administrative officers of the Government would be permitted thereafter to vacate and set aside at will such action.

It would seem to follow that one whose goods are illegally classified may have just grounds for dissatisfaction, even though the rate of duty be less than the legal rate and that a remedy by appeal to the board may prove a substantial benefit to him as an importer, and when it is considered that this power has been exercised in numerous instances and sustained by the court in at least one case, and the terms of the statute which has received such construction left unchanged in later enactments, the conclusion reached in Judge Martin's opinion is fully warranted.

### DISSENTING OPINION.

BARBER, Judge, dissenting: I am unable to agree with the conclusion reached by my associates in this case, and, in view of what I consider the legal importance of the question determined, feel constrained to express my dissent therefrom and to give my reasons therefor.

As appears from the court's opinion, the sole issue is whether or not the importers had the right of appeal to the Board of General Appraisers from the collector's assessment, notwithstanding the fact

that the applicable rate of duty claimed in their protest was higher than that assessed by the collector. It is conceded that the rate claimed by the protest was the correct one, and the error in assessment was apparently a mistake which it is common knowledge sometimes occurs in customs matters as well as in other legal proceedings.

Section 14 of the customs administrative act of June 10, 1890, and reenactments thereof, which, so far as are material to the issue here, are couched in the identical language of said section 14, are relied upon by the court as vesting in the importers the right of appeal in this case. That section is as follows:

SEC. 14. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within ten days after "but not before" such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. Upon such notice and payment the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the Secretary of the Treasury for such duty at that port or at any other port, which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such who shall liquidate the entry accordingly, except in cases where an application shall be filed in the circuit court within the time and in the manner provided for in section fifteen of this act.

In the opinion it is held that, if the words "if dissatisfied" be given their ordinary meaning, there can be no doubt of the right of appeal in this case, because it is said that the importers here are, within such meaning, dissatisfied with the collector's decision. The ordinary meaning of the word "dissatisfied" is not much discussed; but it is said that section 21 of the act of June 22, 1874, which gives to the Government the right of reliquidation within one year after the date of original liquidation, greatly favors the contention that the importers are entitled to an appeal because such reliquidation may be at a higher rate than that originally applied, and it is concluded that, in cases wherein an importer is convinced that the assessed rate is illegally low, or indeed in cases where there is extreme doubt as to the correct rate, the importer for his own safety should be given the right of appeal, and that it is reasonable to believe the statute intended to cover such cases as well as those in which the collector's assessment may be regarded by the importer as too high.

The word "dissatisfied" is of course a participial form of the verb "dissatisfy," the ordinary meaning of which is given by lexicographers as, to make discontented or uneasy from disappointment or failure of expectation, to displease, and is said to be ordinarily used in the passive form, as, "to be dissatisfied with one's lot." (Standard Dictionary.) It is manifestly the opposite of the word "satisfy," which is generally defined to mean to meet the desire or wish, to fulfill the expectation of, to gratify, to content, to free from uncertainty, doubt, or anxiety; so that, as I think, the court's opinion must be interpreted to mean that whenever an importer is not contented, is not satisfied or gratified with, or has uncertainty concerning, or is displeased with, or doubts, or is disappointed by the construction given by the collector to a duty paragraph, he is thereby dissatisfied within the meaning of the statute and vested with the right and clothed with the power to compel a judicial determination as to its meaning, to the end that his desire or expectations may be realized or his doubt and uncertainty set at rest thereby, and that he is consequently vested with the power to compel the Government to litigate with him before the Board of General Appraisers and this court as to the intent of Congress as expressed in any applicable statute, or any statute claimed to be applicable, whether or not he is in fact injured by the construction given thereto by the Government.

The limitation, if one is attempted, to cases where importers "are convinced that the assessed rate is illegally low," or where "there is extreme doubt as to the correct rate," to my mind results in no limitation whatever. For the purpose of waging a suit, an importer may always be "convinced" that the assessed rate is illegal. A doubt is an uncertainty of mind or an unsettled state of opinion regarding any matter. Its existence naturally depends largely upon the capacity and condition of the mind of the person whose doubt it is material to consider, and if the presence of extreme doubt is essential to the right of appeal a doubt will always be "extreme" in the mind of the doubter. Besides all this, it is illogical to suppose that any tribunal must spend its time in splitting hairs to determine whether a party is convinced that a rate is illegal, or as to the degree of doubt he entertains upon that subject, in order to ascertain whether or not he is properly before it. If he says he doubts, an importer must, under the opinion, have his right of appeal, and that this is what is meant is obvious, because it is said, in effect, that the object of the appeal is to obtain a judicial determination as to the meaning and applicability of a given statute. It results, then, in this, that an importer, who is moved only by curiosity or by a spirit of controversy, has an absolute right to litigate with the United States the interpretation of any duty paragraph of the tariff law, even though the Government may claim a construction thereof more favorable to

him than he believes should be given it, and as a result of which, in a given case, he is benefited and can not be damnified.

Later herein reference will be made to the liability to reliquidation, which the opinion suggests as fortifying the conclusion reached.

Before a determination should be reached upon the issue in this case, I think a more extended consideration than is found in the court's opinion must be given not only to previous tariff legislation and judicial determination thereunder, but also to certain cardinal principles involved, which, as briefly as may be, I undertake to do.

All governments in all times have found it necessary to adopt stringent measures for the collection of taxes, and to be rigid in the enforcement of them. These measures are not judicial; nor does the government resort, except in extraordinary cases, to the courts for that purpose. The revenue measures of every civilized government constitute a system which provides for its enforcement by officers commissioned for that purpose · * * *. Such appeals are allowed to specified tribunals as the lawmakers deem expedient * * *. In the customs department it permits appeals from appraisers to other appraisers, and in proper cases to the Secretary of the Treasury * * *. It will readily be conceded, from what we have here stated, that the Government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues. Cheatham *et al. v.* United States (92 U. S., 85, 88).

It is elementary that the United States are not suable of common right and that no suit can be maintained against it in any court unless by express authority of Congress. The right to wage such a suit is a privilege and Congress has the sole power to determine who may enjoy it. United States *v.* Clarke (33 U. S., 8 Pet., 436); De Groot *v.* United States (72 U. S., 5 Wall., 419, 432); Nichols *v.* United States (74 U. S., 7 Wall., 122); Stanley *v.* Schwalby (147 U. S., 508); Austin *v.* United States (155 U. S., 417, 432); Belknap *v.* Schild (161 U. S., 10); Stanley *v.* Schwalby (162 U. S., 255).

The grant of the right to bring a suit against the United States and of jurisdiction in the court to consider the same must be clearly shown and will not be implied. "Statutes of this nature extending the right to sue the Government will generally be strictly construed." Blackfeather *v.* United States (190 U. S., 368, 376).

Summarizing and restating the principles declared in the above case, it appears that Congress has the power to create such tribunals as it sees fit for the enforcement and interpretation of revenue laws; that whether it will submit questions arising thereunder to the judgment of judicial tribunals is within its discretion to determine; that statutes extending the right to bring a suit against the Government will generally be strictly construed.

With these principles in mind, the soundness and propriety of which can not be doubted, it is proper to turn to a brief examination of previous legislation germane to the consideration of the question before us.

From the earliest history of the Government, it appears that the duty of superintending the collection of its revenue, whether arising from customs duties or otherwise, has been vested in the Secretary of the Treasury. Revised Statutes (secs. 248, 249), and earlier statutes cited on the margin thereof. Upon him has been cast the duty to make and issue from time to time regulations and instructions, not inconsistent with the law, for carrying out the provisions of the statutes relating to the collection of duties. Revised Statutes, section 251, statutes cited, and Neilson *v.* Lagow (53 U. S., 12 How., 98).

As Congress "had confided to the Secretary of the Treasury the power of deciding in the first instance on the amount of duties demandable on any specific importation, so it could have made him the final arbiter in all disputes concerning the same." Nichols *v.* United States (74 U. S., 122).

By section 2652 of Revised Statutes, it is made the duty of the officers of the customs to execute and carry into effect all instructions of the Secretary of the Treasury as to the execution of revenue laws, and in case any difficulty arises as to the construction to be given to any part thereof the decision of the Secretary of the Treasury will be conclusive and binding upon the officers of the customs, although their legality may be reviewed by the courts in proper cases upon proper proceedings instituted on behalf of importers or other party named in the statute as having such right. Greely *v.* Thompson (51 U. S., 10 How., 225, 234).

As stated in the opinion of the court, the right of appeal prior to 1890 was regulated by section 14 of the act of June 30, 1864, and it may be further said that other prior acts upon this subject are not specially referred to herein because, in the essential provisions which regulate the right of appeal, no different language has been employed by Congress than that in the act of 1864 since the earliest tariff laws. Section 14 of the act of 1864 provided as follows:

Sec. 14. *And be it further enacted,* That on the entry of any vessel, or of any goods, wares, or merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such goods, wares, or merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner, master, commander, or consignee of such vessel, in the case of duties levied on tonnage, or the owner, importer, consignee, or agent of the merchandise, in the case of duties levied on goods, wares, or merchandise, or the costs and charges thereon shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond, as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically, the grounds of his objection thereto, and shall within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the Secretary of the Treasury, whose decision on such appeal shall be final and conclusive; and such vessel, goods, wares, or merchandise, or costs and charges, shall be liable to duty accordingly, any act of Congress to

the contrary notwithstanding, unless suit shall be brought within ninety days after the decision of the Secretary of the Treasury on such appeal for any duties which shall have been paid before the date of such decision on such vessel, or on such goods, wares, or merchandise, or costs or charges, or within ninety days after the payment of duties paid after the decision of the secretary. And no suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted, until the decision of the Secretary of the Treasury shall have been first had on such appeal, unless said decision of the secretary shall be delayed more than ninety days from the date of such appeal in case of an entry at any port east of the Rocky Mountains, or more than five months in case of an entry west of those mountains.

The question naturally arises, What was the right of appeal thereunder and by whom exercised?

The section provides that on the entry of any vessel or of any goods, wares, or merchandise, the decision of the collector of customs, *as to the rate and amount of duties* to be paid on the tonnage of such vessel, or on such goods, wares, or merchandise, and the dutiable charges thereon, shall be final and conclusive against all persons interested therein, unless one of the persons named shall, within 10 days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond as for consumption, give notice in writing to the collector on each entry, *if dissatisfied* with his decision, setting forth therein distinctly and specifically the grounds of his objections thereto, and further provides for an appeal within 30 days to the Secretary of the Treasury, whose decision thereon shall be final and conclusive, unless suit shall be brought within a time therein prescribed.

To the casual reader, I think, it must be plain that this section only contemplated an appeal because the rate and amount of duty was by the importer claimed to have been too high. It is hardly conceivable than an importer would be dissatisfied with too low a rate or too small an amount, or that Congress had in mind that such an exaction could be ground for dissatisfaction in view of the provision that the decision of the Secretary of the Treasury should be final unless suit was brought in the proper court to review the same and to recover the unlawful exactions. There could be nothing to recover unless too great an amount had been taken, and if duty had been exacted when none was lawful, it would still be true that too much had been paid. In other words, the statute covered two cases: One, when some duty was lawful and too much had been taken; the other, when none was lawful and some had been taken. If too little had been taken under an applicable statute, it was not an unlawful exaction.

It may be confidently asserted that no appeal in the language of section 14 of the act of 1864 was thereunder ever taken to the Secretary of the Treasury because the collector had assessed too low a rate or had taken too small an amount of duty, and with equal confidence that no suit was ever brought against a collector or other officer

because too low a rate or too small an amount had been exacted. It is not necessary, however, to indulge entirely in speculation upon this question.

In Nichols *v.* United States (74 U. S., 122) the Supreme Court, in discussing the earlier act of similar import (5 Stat., 727), used this language:

Congress said to the importing merchant, you must pay the duties assessed against you; but, as you say, they are illegally assessed. If you file a written protest stating wherein the illegality consists, you can test the question of your liability to pay in a suit against the collector, to be tried in due course of law, and, if the courts decide in your favor, the Treasury will repay you; but in no other way will the Government be responsible to refund.

And in the discussion of the question of whether the Court of Claims had jurisdiction to award against the Government for duties illegally assessed, the court further said:

To guard against such consequences, Congress has from time to time passed laws on the subject of the revenue, which not only provide for the manner of its collection but also point out a way in which errors can be corrected. These laws constitute a system which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and illegal exactions of duties. In the administration of the tariff laws, as we have seen, *the Secretary of the Treasury decides what is due on a specific importation of goods*, but if the importer is dissatisfied with this decision, he can contest the question in a suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment.

In Hilton *v.* Merritt (110 U. S., 97) it was said:

Considering the acts of Congress as establishing a system, and giving force to all sections, its plain and obvious meaning is that the appraisement of the customs officers shall be final, but all other questions relating to the rate and amount of duties may, if the importer has taken the prescribed steps, *be reviewed in an action at law to recover duties unlawfully exacted.*

Upon this question reference may also be had to the following cases: Elliott *v.* Swartwout (35 U. S., 10 Pet., 137); Bend *v.* Hoyt (38 U. S., 13 Pet., 262); Cary *v.* Curtis (44 U. S., 4 How., 235); Fong Yue Ting *v.* United States (149 U. S., 698); Andreae *v.* Redfield (98 U. S., 225).

No decision of any tribunal has been cited which remotely indicates that prior to the customs administrative act of June 10, 1890, an importer or other party named as being entitled to an appeal "if dissatisfied" has exercised or claimed to exercise such right because duty was taken at too low a rate or in too small an amount upon his imported merchandise. No statute has been referred to which seems to recognize such a right, and no regulation of the Treasury Department indicative thereof has been called to our attention, and indeed, as I understand, neither party in the case before us urges that such right ever existed or was claimed to exist prior to 1890.

I conclude, therefore, that prior to that date, both by reason of the language of the statutes, the practice thereunder, and the decisions of the courts thereon, no right of appeal was ever vested in an importer because the customs officers assessed duty at too low a rate or exacted too small an amount thereof. Thus, for practically 100 years, the only way by which an importer who thought he ought to pay a higher rate or greater amount of duty could obtain relief from such an embarrassing position, if any there were who were dissatisfied thereby, was to procure his views to be presented to the Secretary of the Treasury with a hope that that official might take his view of the statute and direct duty to be assessed accordingly. He could always assume that the Government might reliquidate at a higher rate and for his own protection could fix a price upon his goods with that contingency in view. If there were any conscientious scruples upon his part against paying too little duty, the same could be satisfied by tendering to the Government such further sum as he felt he ought to pay, but the courts could not relieve him in an action to recover for duties illegally assessed.

The opinion, however, disposes of this matter with the observation that "whether the Secretary was invested by this act with authority to entertain appeals upon protests claiming a higher rate than was assessed need not now be considered," adding that, "however, the provisions for such appeals were radically altered by Congress by the act of June 10, 1890, and the terms of that act, as subsequently amended, must furnish the rules which control the present issue."

But it is to be considered whether the act of 1890 did change the provisions for appeal. These changes, if they exist, must be found in section 14, above quoted. Therefrom it appears that the decision of the collector *as to the rate and amount of duties* chargeable upon imported merchandise shall be final and conclusive against all persons interested therein, unless any one of the persons named, within 15 days after, but not before, the ascertainment and liquidation of duties on merchandise entered both for bond and consumption, *if dissatisfied* with such decision, gives notice in writing to the collector, setting forth therein distinctly and specifically, and with respect to each entry or payment, the reasons for his objection thereto, and, if the merchandise is entered for consumption, shall pay the full amount of the duties and charges ascertained to be due thereon.

The decision to be protested or appealed from is precisely the same as mentioned in section 14 of the act of 1864, namely, the *decision of the collector as to the rate and amount of duties chargeable upon imported merchandise,* and the person who may exercise the right is the person *dissatisfied* therewith. Identical language defining and describing both is used in each section. The importer under each section must distinctly and specifically set forth the grounds of his objection to

such decision. The earlier act provides for appeal to the Secretary of the Treasury and review by the courts in a suit to recover excessive exactions, as already herein set forth, while the later one provides for appeal to the Board of General Appraisers and to the Circuit Court for a review of their decisions.

I confess entire inability to discover that the later section in express terms in any manner enlarges the right or purpose of a protest or appeal from the decision of the collector beyond what it was under prior statutes, or provides for or permits a protest against or appeal from such a decision exacting duty at too low a rate or in too small an amount.

It seems unnecessary to cite authorities to the fundamental rules that when successive legislative enactments contain identical language the presumption is that the later language is used in the same sense as the earlier, and that if doubt arises as to the meaning of a statute the construction theretofore given to it by courts, or that which has for a long time been adopted by an executive department charged with the duty of enforcing it, is entitled to great weight, both of which rules, from what has already been said, it is quite apparent, may be invoked here. Lewis's Sutherland Statutory Construction (secs. 399, 401–403).

The opinion seems to suggest that section 12 of the act of 1890 confers some authority upon the Board of General Appraisers respecting appeals to or issues to be decided by them that upholds the decision. But section 14 furnishes the rule to determine the right of protest or appeal to the board and specifies who may exercise it, while section 12 simply declares that the board shall "exercise the powers and duties devolved upon them by the act," and further shall "exercise under the general direction of the Secretary of the Treasury such other supervision over appraisements and classifications as may be needful to secure lawful and uniform appraisements and classifications at the several ports."

Section 14 does not warrant the enlargement of jurisdiction claimed here, and no showing is made that the Secretary of the Treasury has attempted to enlarge the same. Indeed, it is not apparent that he could do so as affecting the right or purpose of protest or appeal.

A court may take judicial notice of changes in the course of business in the country, and may refer to proceedings in the legislature in construing an act. Especially are the reports of its committees thought to be proper sources of information in ascertaining the legislative intent. Lewis's Sutherland Statutory Construction (secs. 469, 470); Church of the Holy Trinity *v.* United States (143 U. S., 457).

The act of 1890, here involved, and substantially as enacted, was recommended to Congress in 1888 by its committee previously thereunto appointed and was accompanied by a report of the committee

which embodied the reasons for its recommendation. Among other things it said, with reference to what finally became said section 14, that it provided for a radical departure from the existing law in respect to appeals and then proceeded to state what it was, in the following language: "The thirteenth (now the fourteenth) section substitutes for the decision of the Secretary of the Treasury in all cases of appeal upon questions of classification and rate of duty, and upon questions as to fees, charges, and exactions, the decision of the board of appraisers," and "confers upon the several circuit courts of the United States appellate jurisdiction upon all questions of law as respects classification and rate of duty."

After a review of prior legislation and certain adjudications thereunder, the committee declared that, by reason of the fact that the statutes then authorized suits in the circuit courts against the collector to review the decision of the Secretary of the Treasury and to recover duties erroneously or illegally exacted—

The amount of litigation which has grown up under the method of procedure is enormous, and is constantly increasing, particularly in New York. * * * It is impossible to compute the amount involved, so that the Government is menaced with obligations amounting to many millions of dollars, and always increasing * * *. It is believed that the proposed section will afford claimants a speedy, just, and efficacious remedy * * *. Under the present system all questions of classification and rate of duty are submitted to the Secretary of the Treasury upon appeal from the decision of the collector when the importer is dissatisfied.

The report of the committee is entirely barren of any suggestion that one object sought to be accomplished by its proposed bill was to enlarge the right or purpose of appeal then given to importers under existing law, or that it had found that evils existed in the administration of the then law by reason of the fact that importers had no right of appeal in the event duty had been taken at too low a rate or in too small an amount. This measure, so reported, was extensively debated in both Senate and House, finally becoming law in June, 1890.

At the expenditure of considerable time I have examined the Congressional Record, and am unable to find in the many discussions of the bill that it was anywhere suggested that new right of appeal was thought thereby to be vested in an importer, or that the jurisdiction to consider appeals on the part of the Board of General Appraisers, so far as relates to the issue here, was conceived to be enlarged beyond that theretofore vested in the Secretary of the Treasury.

Considering the evils which the committee reported it had found and thought should be remedied, and the fact that the material language of the old and new law is identical, I conclude that it was not the intent of Congress to enlarge the right or extend the purpose

of a protest and appeal from the decision of the collector. The intent was, rather, to substitute for the Secretary of the Treasury the Board of General Appraisers as the tribunal of first instance to hear a protest, and to provide for a review in the circuit courts, upon appeal from the board, of the same questions that had formerly been reviewable only by a suit to recover duties erroneously or unlawfully exacted as a result of the decision of the Secretary of the Treasury.

In United States *v.* Ranlett & Stone (172 U. S., 133), in which a protest had been made to the board and in due course had reached the Supreme Court, it was said that—

The remedies provided by the act of June 10, 1890, furnished the equivalent for the action against the collector which was originally the remedy for an illegal exaction of duties, * * * and as in that action, so in this proceeding, the importer must establish illegality in order to recover back duties paid under protest.

In United States *v.* Klingenberg (153 U. S., 93), the court held, with reference to section 14 of the customs administrative act of 1890, that—

If the decision of the collector imposes an excessive amount of duties under an improper construction of the law, an importer may take an appeal to the Board of General Appraisers, whose decision on such questions is not made conclusive, as it is in respect to the dutiable value of merchandise.

In Passavant *v.* United States (148 U. S., 214), the court considered the question, which by it was stated to be, whether under the customs administrative act of June 10, 1890, the circuit courts of the United States have any jurisdiction to entertain an appeal by importers from the decision of the board as to the dutiable value of imported merchandise. This question the court answered in the negative, and said:

The decision of the collector from which appeals are provided for by section 14 are only decisions as to the rate and amount of duties charged upon imported merchandise, and decisions as to the dutiable costs and charges, and decisions as to fees and exactions of whatever character.

It is granted that in none of these cases was the precise issue involved that is here presented, but in each the statute of 1890 was under review, and in the last two the court took occasion to refer to the section under consideration here, and I think used language which is wholly at war with any notion that an importer could appeal when, if he won, he could recover nothing.

The importers here are seeking to wage a suit against the United States. To be so permitted, it devolves upon them to show that Congress has by express statute so consented, and no presumption as to the grant of such a privilege will be made. (See cases cited *supra.*)

In my opinion, the importers here have utterly failed in this regard.

Further light may be thrown upon the meaning of the word "dissatisfied" by a consideration of section 15 of the act of 1890. The entire act having substituted the Board of General Appraisers for the Secretary of the Treasury as the tribunal of first instance to hear the importer's protest, it was of course in harmony with the previous law, and for the protection of the Government, consistent and necessary to provide that the United States, by its proper representatives, as well as the importer or other person named, might appeal from adverse decisions of the board. We find, therefore, in section 15 a provision that, "if the owner, importer, consignee, or agent of any imported merchandise, or the collector, or the Secretary of the Treasury shall be dissatisfied with the decision of the Board of General Appraisers," a right of appeal was given to the circuit courts from the decision which the board might make under the authority of section 14.

It can not well be claimed that the word "dissatisfied," as here used, has a meaning other or different than as used in section 14. The importer or other party named, on the one hand, might obviously be "dissatisfied" with the decision of the board because the rate allowed was too high or the amount ordered paid too much. The Government, on the other hand, might be "dissatisfied" because either were too small, and so either party, when the scales of justice, held by the board, inclined to the opposite side, had his remedy by appeal if dissatisfied.

This section 15 was before the Supreme Court in United States v. Lies (170 U. S., 628). It there appeared that an importer had protested against certain assessed rates of duty upon tobacco and also because it was claimed that the law relating to the examination of the tobacco had not been complied with. All questions were decided by the board against the importer, except that it sustained the protest to the extent of ordering that the amount of tobacco should be determined in a way that was in favor of the importer and against the Government. The importer was dissatisfied with the decision of the board as to the rate and amount of duty and applied to the Circuit Court for a review of the questions involved. The United States made no application for a review. In the Circuit Court the importer conceded that the decision of the Board of General Appraisers should be affirmed, but the United States asked the court to reverse that part of the decision which was favorable to the importer. This request was denied by both the Circuit Court and the Circuit Court of Appeals, and was the only question before the Supreme Court. In its opinion the latter court said, among other things, referring to section 15, that thereby "provision is made not only for a review by the importer, but it expressly includes the case where the Secretary of the

Treasury shall be dissatisfied with the decision of the board * * *. If, therefore, the Government, through the collector or the Secretary of the Treasury, seeks to review a decision made by the Board of General Appraisers, because either of such officers may think such decision is in any or all of its provisions too favorable to the importer, the section (15) provides the way and the only way in which that review is to be obtained." The judgment of the court below was affirmed, and in discussing the jurisdiction of the Circuit Court to review a decision of the board under the provisions of section 15 the Supreme Court said that the decision to be reviewed was that of the Board of General Appraisers "which was properly brought before the court by virtue of an application regularly filed to obtain such review by the party against whom the decision was made."

The question of whether a decision might be brought up for review by the party in whose *favor* it was made was not, it is true, discussed by the court, but it is incomprehensible it could have overlooked such a right, if it existed, and if it was believed to exist the quoted language, without qualification, probably would not have been used.

I think the word "dissatisfied," in the sections under consideration, is employed in the sense that the word "aggrieved" is used as describing who may appeal in various statutes to which it is not my purpose in detail to refer.

In the Nichols case, *supra*, the court likened the statutory provisions regulating the right of recovery against the United States for excessive duties to those providing for recovery of excessive exactions under another exercise of the power of taxation, in the following language:

And an equal provision has been made to correct errors in the administration of the internal-revenue law. The party aggrieved can test the question of illegality of an assessment or collection of taxes by suit, but he can not do this until he has taken an appeal to the Commissioner of Internal Revenue. * * * Thus it will be seen that the person who believes he has suffered wrong at the hands of the assessor or collector can appeal to the courts, but he can not do this until he has taken an intermediate appeal to the commissioner * * *.

The court reiterated what it had said in other cases, that the law relating to the collection of revenues constituted a system, and, in denying jurisdiction of the Court of Claims in the case before it, said:

The mischiefs that would result if the aggrieved party could disregard the provisions in the system, designed expressly for his security and benefit, and sue at any time in the Court of Claims, forbid the idea that Congress intended to allow any other modes to redress a supposed wrong in the operation of the revenue laws than such as are particularly given by those laws.

By "aggrieved party" the Supreme Court referred to an importer from whom too much duty had been exacted, and by reference to the

statute relating to internal-revenue taxation, to which the court alluded, it will be found that by the term "party aggrieved" it also meant one who had been compelled to pay more than the law required.

Indeed, the substitution of the word "aggrieved" for "dissatisfied" clarifies the whole situation, and suggests the rule which solves the controversy. To be legally "dissatisfied" within the meaning of the law the party, be it importer on the one side or the Government on the other, must be aggrieved because his pecuniary interest or personal right is or may be affected or concluded by the decision as a result of which he claims to be aggrieved.

In Sherer v. Sherer (93 Me., 210) a statute was under consideration which gave a person aggrieved by a decree the right of appeal therefrom. The court said:

It is now long and well settled that a person is not "aggrieved" in the statutory sense of that word unless he would be concluded by the decree from the assertion of some claim of personal or property right. The mere fact that a person is hurt in his feelings, wounded in his affections, or subjected to inconvenience, annoyance, discomfort, or even expense by a decree, does not entitle him to appeal from it as long as he is not thereby concluded from asserting or defending his claims of personal or property rights in any proper court.

To same effect see Lawless v. Reagan (128 Mass., 592).

The following are a few of the numerous authorities which may also be cited: Labar v. Nichols (23 Mich., 310); Guarantee Co. v. Insurance Co. (124 Fed. Rep., 170); Swackhammer v. Kline (25 N. J. Equity, 503); Decennial Digest, Appeal and Error (sec. 151).

It is said, however, that because the first liquidation is not conclusive against the Government and reliquidation at a higher rate by its officers may be made that the importer should have the right of appeal from the first liquidation.

The right of reliquidation is given by section 21 of the act of June 22, 1874 (18 Stats., 190), which provides that whenever merchandise shall have been entered and passed free of duty, or whenever duties upon imported merchandise have been liquidated and paid and the merchandise delivered to the importer, "such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties."

Just how the fact that the Government may reliquidate can support the right of appeal from the first liquidation by an importer, is not apparent, is not elucidated in the opinion, or satisfactorily explained by counsel.

It is incumbent upon the importer to pay all legal duties on imported merchandise, and upon customs officers to collect the same. The settlement or ascertainment thereof by the proper officers is the

liquidation. The Government having made the liquidation by its officers can not protest the same, but upon the importer's protest may reliquidate, or upon its own motion may do the same thing. The importer may protest the first liquidation, and he may also protest any reliquidation in the same manner, and with equal right of having the same reviewed upon appeal. It is apparent, therefore, that the rights of an importer or other party named are not abridged by the reliquidation.

The only reason which occurs to me why it may be to the advantage of an importer to appeal from a liquidation at too low a rate is this: He may desire to know the lawful duty before he fixes the selling price of his importation, as if, after fixing it, reliquidation at a higher rate is made, he may have sold at too low a price. But he is presumed to know the law, and if too little duty is first taken, is charged with knowledge that later he will be called upon to pay the correct amount. He can therefore easily protect himself by fixing his prices accordingly. The practical benefit of an appeal, if made to enable a correct price to be fixed, would not generally be of use, so far as relates to goods entered for consumption, because it will, in the ordinary course of events, be months before a final decision can be reached. As to future importations, they may or may not be made, and afford at best a remote reason for such an appeal. When duties are liquidated at too high a rate, it is common knowledge that the selling prices fixed are based thereon, so that, in event an appeal is sustained, the excess recovered, less the costs of recovery, becomes an additional profit.

An importer suffers no injury whatever as the result of the first liquidation if it be too low; he suffers no injury as the result of the reliquidation if it be correct, and if it be too high he may amply protect himself by protest and appeal.

But there is one question which very largely enters into the amount of duties fixed by a liquidation, relating to which the importers have but limited right of appeal, and that is the question of value. Under section 12 of the act of 1890, when the importation is first appraised, the value fixed thereby is final, unless the importer be dissatisfied therewith and takes the necessary steps to appeal to reappraisement, and upon that issue he can not get beyond the Board of General Appraisers. It would seem from the provisions of this section that the importer thereunder could only be dissatisfied because of too high a value, as the right of relief from too low a valuation is only given to the collector. He can order a reappraisement if the first one is too low, and he only in express terms is given the right of appeal from too low a reappraisement. This provision seems to fortify the conclusion already reached as to the meaning of "dissatisfied" and to indicate

that the theory of a right in the importer to litigate for the purpose only of obtaining a judicial construction of a statute is untenable.

The language of section 21 of the act of 1874 is comprehensive enough to suggest that, if, within the period named, the Government, not being chargeable with laches, becomes possessed of facts which demonstrate that too low a rate has, by the board, or this court upon appeal, been assessed upon an importation, presumably because the real facts were not presented, the entry may be reliquidated at a rate different than the one so adjudicated. In case of fraud or misrepresentation by an importer there would appear to be much force in this contention.

The case of United States v. Leng (18 Fed. Rep., 15) is referred to as authority for the statement that such reliquidation could not be had.

The Supreme Court in the case of United States v. Lies, *supra*, however, and because its decision turned upon another question, expressly declined to decide that question. Of course, if the Government, in any event, after the decision by the board, which was not appealed from, or after a decision of this court fixing the proper rate of duty, could nevertheless reliquidate at a different rate, the contention of the importers in this regard would be altogether deprived of force. In view of the fact that this precise issue was not fully briefed or argued by either party, I do not undertake to say how it ought to be decided.

The litigation in the so-called Rupee cases is somewhat relevant to the question and may be found in Klumpp v. Thomas (162 Fed. Rep., 854); United States v. Whitridge (197 U. S., 146); Louisville Pillow Co. v. United States (144 Fed. Rep., 386).

The issue should not be disposed of without reference to the function and effect of a protest.

It is a declaration of the importer's claim and upon which his right of recovery is founded. In all appellate tribunals his contentions are limited thereby. The right of recovery thereunder is upon the theory that he has been unlawfully compelled to pay money in order to recover the possession of his goods.

It is only unlawful to detain them when they are held for *more* duty than the law justifies. Herman v. Robertson (92 U. S., 521); Davies v. Arthur (96 U. S., 148); Arthur v. Unkart (96 U. S., 118); Saltonstall v. Birtwell (164 U. S., 54); Black's Law Dictionary (pp. 957–958).

Such was the law under section 14 of the act of 1864, and it does not since seem to have been modified by Congress or by the courts. Indeed, the importers here recognize such law as, in each protest, it is averred that the duties are paid under compulsion and to obtain and retain possession of the merchandise.

It should not be overlooked that no claim is made that in fact these or any other importers, as such, have sustained damage or injury, in any sense, because too low a rate or too small an amount of duty has been exacted of them.

I conclude that Congress has designed to leave with the Secretary of the Treasury, where it has always abided, the right to determine what rate of duty shall be taken on imported merchandise, subject to review by the board and the courts on the appeal by the importer in those cases only where the duty taken is excessive as to rate and amount, and with the corresponding right on the part of the Government to appeal to the courts whenever the board orders reliquidation at too low a rate. If it is believed that too low rates or too small amounts are being exacted, the matter may now, as always, be presented to the Secretary of the Treasury, and if he wilfully disregards his duty, the same remedy therefor exists now as heretofore. Congress did not intend by the act of 1890 to.open the door to a new kind of litigation against the Government, the right to wage which had not before existed.

The real party in interest, in one of these cases at least, is a domestic manufacturer, and it is argued in effect, in view of the fact that one of the purposes of the tariff law is to encourage the industries of the United States, that a protected domestic industry, under the guise of an importer, should have the right to appeal from too low an assessment of duty for the purpose of securing an adjudication that a higher rate is lawful, to the end that the protective features of the law may be made fully operative. This question is not referred to in the opinion of the court, and I refer to it only for the purpose of expressing my disagreement therewith.

It remains to consider the decided cases which it is held justify a different interpretation of the statute than the one which I reach, although it is conceded that the language relating to appeals has not been modified or changed since 1890.

The first of these decisions is the De Blois & Ballut case (T. D. 14691, decided January 16, 1894). Therein Sharretts, General Appraiser, said in substance that the notice of dissatisfaction claimed in the alternative a higher rate of duty than that imposed by the collector and that the board felt constrained to sustain the protest, but no discussion of the question involved was entered into.

In the Reissner case (T. D. 23471, decided in 1902), the merchandise was passed free of duty by the collector, against which decision the importer protested, claiming it was dutiable. The board (by Somerville, General Appraiser) fully discussed the question of dutiability and further said: "It may be seriously questioned whether a party importing goods which are admitted to free entry can legally take

exception to the action of a Government officer which presumptively does him no injury," and without further discussion of that subject overruled the protest and affirmed the decision of the collector. It may be observed as to this case that the effect of the board's decision overruling the protest, accomplished the result of affirming the collector's decision, just as would have resulted had the protest been dismissed for lack of jurisdiction.

The case of Wakem & McLaughlin (T. D. 24723), decided by the board October 12, 1903, shows that the importers were domestic manufacturers, and admittedly made the importation and protest because the rate assessed was too low and for the purpose of securing an adjudication which, if successful, would result in granting them greater tariff protection. The board (by Fischer, General Appraiser) said: "There is some doubt whether a protest of this character can properly be entertained at all, as the party has suffered no injury," but, nevertheless, it passed upon the merits of the claim. It did not otherwise discuss the importers' right of appeal to it, and again overruled the protest and affirmed the action of the collector.

The United States Circuit Court for the Northern District of Illinois, Kohlsaat, Judge, in 1904, upon a review of the board's decision in the Wakem case, and without any discussion whatever, so far as the reported case shows, of the question of the right of appeal, reversed the decision of the board. It may be noted in passing that this opinion can not be found in the Federal Reporter, and appears only to be reported as T. D. 25827.

It is said that these decisions warrant the conclusion that the act of 1890, as amended by Congress in 1894, in 1897, in 1908, and in 1909, adopted and approved the broader interpretation of the phrase "if dissatisfied" as the same had been applied in such decisions, but it is agreed that the statutory language material to the question was in no wise changed.

It will be observed that the earliest of these decisions was that of the board, January 16, 1894, while the next in order was by the same tribunal in 1902, so that the reenactments of 1894 and 1897 can only be said to have been made with regard to the lone decision of 1894.

Can it fairly be argued that any intent of Congress can be presumed, at the date of either of these two reenactments, to recognize a change of law by reason of this solitary opinion of the board, which fails to disclose any reasons to support the conclusion therein announced, was not in harmony with decisions of courts of last resort, and was opposed to the practice prior to 1890?

At the time of the legislation of 1908 and 1909 the number of these decisions had been augmented by one of the board in 1902, another in 1903, and of the Circuit Court reviewing the last case in 1904. None of these decisions discloses any reason why it was held that the

law was different or other than for so long a time had obtained upon the question involved, and the opinions of the board express doubts as to its jurisdiction. The Sheldon case (T. D. 31017) was decided since the attention of Congress was last called to the subject of the customs administrative law, and, upon the point now under consideration, is not, therefore, an authority.

It is granted that when a statute has uniformly received a settled interpretation by courts, especially those of last resort, its reenactment in unchanged language is very strongly indicative of a legislative affirmance of such judicial interpretation. This is upon the theory that the legislative body is presumed to know what the judicial interpretation is, and to thereby adopt it. At best this is sometimes a violent presumption, and to apply it to the decisions relied upon here is, I think, going far beyond reason or precedent. The correctness of this view would seem to be strengthened by the fact that, from 1890 to 1908, there have been a vast number of importers who, in theory at least, possessed the same rights of appeal as do the importers here, that thousands of protests have been heard annually by the board, and many cases by the courts, and yet in none, except those above mentioned, has the pretended right received recognition.

The question involved is one of jurisdiction. It has not been discussed in any of the decisions relied upon. The representatives of the Government may well, in any one of those cases, have preferred to let them take the course they did rather than to assume the annoyance or expense of an appeal, but such action by those representatives would not affect the right of the Government at any time to raise the question of jurisdiction. Stanley *v.* Schwalby (162 U. S., 255). To have the effect claimed, a decision, if not one of a court of last resort, should at least be such a precedent as warrants the application of the doctrine of *stare decisis*. The test there has been stated substantially as follows: That where a question has been well considered and deliberately determined in one court, another court of coordinate jurisdiction at least is not at liberty to disturb or unsettle the law of the first case, unless impelled thereto by the most cogent reasons. Lewis's Sutherland Statutory Const. (sec. 480), Beals *v.* Hale (45 U. S., 36).

That a court of last resort should give great weight to a uniform, long adhered to line of decisions of lower courts construing a statute is manifest, but that condition is wanting here.

If Congress desires to give importers the right of appeal claimed here it can easily say so, but such right should not be inferred.

I would reverse the decision of the Board of General Appraisers in these cases upon the ground that it was without authority to hear the protests therein.