(C.D. 2453)

DIAMOND TOOL RESEARCH CO. INC. MICHAEL WERDIGER, INC. *v.* UNITED STATES (CHRISTENSEN DIAMOND PRODUCTS, PARTY IN INTEREST)

United States Customs Court, Third Division

(Dated May 8, 1964)

*D. Roy Owen, Jr., Donald Hiss,* and *David S. Geldzahler* for the plaintiffs.
*Andrew P. Vance,* Chief, Customs Section (*Glenn E. Harris* and *Arthur H. Steinberg,* trial attorneys), for the defendant.
Party in Interest not represented by counsel.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: These two protests were filed under the provisions of section 516(b) of the Tariff Act of 1930, as amended. Defendant has filed motions praying the court to dismiss each of the protests. The issues in the two motions are identical. The parties have filed, as to each, either the same briefs or a combined brief, and both parties orally argued together the two motions. For purposes of our decision on these motions, we write a single opinion for both cases.

Defendant, in its motions, alleges three grounds for dismissal of these protests. The grounds are:

First, because the protest fails to allege that plaintiff is an *American* manufacturer, producer, or wholesaler of merchandise of the class or kind imported by the ultimate consignee.

Second, because plaintiff is not an American manufacturer, producer, or wholesaler, within the meaning of those terms as used in section 516(b).

Third, because the court lacks jurisdiction to hear a section 516(b) protest which seeks, by way of remedy, classification of merchandise as being entitled to free entry or to a duty rate lower than the rate that was assessed.

We shall discuss these issues in seriation, notwithstanding that defendant's brief presents, formally, arguments only as to the first and third of the grounds alleged in its motions to dismiss.

For the purpose of decision on a motion to dismiss a protest, the facts stated in the protest are taken to be true and are to be construed in the most favorable light. If, in view of what is alleged, it is reasonable to conceive that plaintiffs can, upon the trial, make a case entitling them to relief, then the protest should not be dismissed. *Asher* v. *Ruppa,* 173 F. 2d 10, and cases therein cited.

Plaintiff's protest recites, in each of these cases, that the protest is made under section 516(b) against "the liquidation of, the classification of, and the rate of duty imposed upon certain synthetic diamond dust [n.b. the particular entry item protested is specifically described in each protest] * * * being of a class or kind manufactured, produced or sold at wholesale" by plaintiff. Defendant argues that the

protest should have recited that plaintiff is an "American" manufacturer, producer, or wholesaler, etc.

We deem omission of the word "American" insufficient ground to oust the court of jurisdiction. It is evident, both from the protest itself and from the extensive procedure required by statute, antecedent to this section 516(b) protest, that both of these plaintiffs are American in the statutory sense, that is to say, domestic.

The protest alleges that it is made under section 516(b). Section 516(b) has to do exclusively with the protests of American manufacturers, producers, and wholesalers. The collector's report to the court, on the protest, states as the basis of affirmation of the protest decision: "Bureau telegram, 8/28/63; and Bureau teletype 8/30/63." While we do not have the texts of this telegram and of this teletype, we do have a published decision of the Commissioner, likewise dated August 28, 1963, and in this very matter, addressed to "Collectors of Customs and Others Concerned," T.D. 55980. This is a public record, of which we may take judicial notice.

In T.D. 55980, the Commissioner stated:

On August 5, 1963, and August 12, 1963, respectively, the Diamond Tool Research Co., Inc., New York, New York, and Michael Werdiger, Inc., New York, New York, were informed, as *domestic producers and wholesalers* of natural diamond dust, * * *.

\* \* \* \* \* \* \*

In accordance, with provisions of section 516(b), Tariff Act of 1930, as amended, notice is hereby given that the Diamond Tool Research Co., Inc., and Michael Werdiger, Inc., have given the notice contemplated by the statute that they desire to protest the classification of such merchandise. However, under section 516(b), as amended, this merchandise will be classified under paragraph 214 of the tariff act so long as no decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals not in harmony with this decision is published. [Emphasis supplied.]

Those named by the Commissioner as domestic producers and wholesalers are the two parties plaintiff here. The Commissioner appears to have been satisfied that they were *American*. The protest recitals, in that respect, when read as a whole, suffice to confer jurisdiction for trial of the issues which the protests raise.

As to defendant's second ground for dismissal, whether these plaintiffs are, in fact, American manufacturers, or producers, or wholesalers, of merchandise *of the same class or kind* as the imported merchandise in issue, is an issue to be proved on trial. It is not a proof required before trial. Defendant's omission of argument on this point, in its brief, may reflect an awareness that this is so.

Nor is it necessary, as defendant might be thought to have argued, that one who files a section 516(b) protest shall be a manufacturer *and* a producer *and* a wholesaler. These are different classes of

possible protestants.   One alone would suffice for purposes of jurisdictional allegation.

The third ground defendant urges for dismissal was extensively argued.   The Commissioner recognized, and stated in writing in the course of the regular procedure provided by statute antecedent to protests, that these plaintiffs, having complained to him that duty assessed on synthetic diamond dust was too high, had laid the foundation for a right to protest under section 516(b).   Notwithstanding, defendant now appears to argue that the Commissioner was wrong.   Whatever our judgment may be after evidence has been adduced on trial, the protests are not deficient in this respect.

Defendant's argument is that the dissatisfaction which permits a section 516(b) protest is only dissatisfaction with a duty rate because it is too low.   Defendant asserts that *such* is the plain meaning and manifest intent of section 516(b).

Section 516(b) is as follows:

The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him.   If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief.   If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions.   If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant.   If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise.   Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port.   The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated.   Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. * * *

When Congress wished to limit a right to the one-way kind of dissatisfaction for which defendant argues, it found plain words in which to state that limitation. Witness section 516(a), having to do with appraisement appeals.

Whenever an American manufacturer, producer, or wholesaler believes that the appraised value of any imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him *is too low* * * *. [Emphasis supplied.]

The language of section 516(b) contains no such limitation as that in section 516(a), quoted above. The right given in section 516(b) is to complain to the Secretary of the Treasury if he "believes that the proper rate of duty is not being assessed * * *." Defendant concedes that, acting on such a complaint, the Secretary may find either that the duty rate is correct, or that it is not correct; and if the latter, then he may either reduce duty or increase it. We agree. Whatever the decision of the Secretary, either that the rate is correct, or that some other classification and a higher or a lower duty rate are correct, the Secretary is required to inform the complainant of that decision. *"If dissatisfied with the decision of the Secretary"* [emphasis supplied], the complainant may then give notice that he desires "to protest the classification of, or rate of duty assessed upon, the merchandise." The Secretary is required, thereafter, to "furnish the complainant with such information * * * as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise * * *." "Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and *the classification and rate of duty he believes proper.*" [Emphasis supplied.]

It tortures language beyond its plain meaning to say that Congress limited dissatisfaction, basic to section 516(b) protests, to dissatisfaction because duty is too low. In section 516(a), Congress limited appeals to reappraisement to those cases where the American manufacturer, producer, or wholesaler believes that imported merchandise is valued too low. It said so in language that does not permit of misunderstanding. It said nothing of the kind in section 516(b). The right there given is predicated upon *dissatisfaction* with classification or with rate of duty.

Congress has not restricted the Secretary in his decision on a complaint. Similarly, it has not restricted the complainant's right of protest in situations in which he is dissatisfied with the decision of the Secretary.

Plaintiff argues that the meaning of section 516(b) is clear, and that resort need not (indeed, may not in the circumstances) be made to outside aids for assistance in determining statutory meaning. As we

understand defendant's position, it is that the meaning of section 516 (b) is clear *only* if subsection (b) is read in the context of subsections (a) and (c); that, when so read, it is manifest that Congress intended by using the words "if dissatisfied," to limit dissatisfaction to that ensuing from a duty rate thought to be too low and which, therefore, would compel the importer to become an adversary party, in order to protect his low rate.

It is an ingenious argument, but it does not stand up. Congress is presumed to use words selected to express the meaning it intends. Courts are not to make the law by forced interpretations of clear congressional language.

If Congress intended to confer a right when an American manufacturer, producer, or wholesaler thought appraisement "too low," it said so. If Congress intended to confer a right when an American manufacturer, producer, or wholesaler was "dissatisfied" with a classification, it said so. Nor did it require that the importer shall be a party defendant. The word is the permissive phrase, "shall have the right."

Defendant finds unreasonable this, to us, clear meaning of the language Congress employed. For defendant professes to see no possibility that any American manufacturer, or producer, or wholesaler, could reasonably be dissatisfied with a duty rate that is too high. Without going into all the arguments advanced by defendant in this regard, we may say that we find it within the realm of reason that an American wholesaler, at least, might think the cost of imported goods, in which he deals, to be too high, because of high duty. To this defendant replies: Let this wholesaler, then, become an importer of the goods, and he can litigate as an importer.

There are at least two obvious answers.

The first is that, with a choice of two remedies, if there be such choice, a party litigant may elect either. The second is that no one can be certain that every American wholesaler can buy particular goods in a foreign market. There may exist restricted outlets or other monopolistic practices, for which Congress has shown scant tolerance when they force American costs higher than seems reasonable. The right to protection against costs with which a wholesaler is dissatisfied because he thinks duty is too high, may well be such a right. Defendant has not shown that it is not.

Having found the language of section 516(b) clear, and its meaning certain, we are not relegated to examination of reports, hearings, and other secondary aids to determination of congressional intent. Were we to do so, we may say that those that have been cited, in the briefs and in oral argument, confirm rather than diminish the clear purport of the language itself.

In their briefs, and in their oral arguments, counsel for the parties found no precedents on all fours with the instant situation. Nor has our independent research disclosed such precedents.

Decisions construing different statutory language are of little or no assistance. There are decisions, two of them, upholding an importer's right to protest a classification that resulted in duty rates he believed too low, under the Tariff Act of 1890. *United States* v. *Schwartz*, 3 Ct. Cust. Appls. 24, T.D. 32315; *United States* v. *Byrne*, 3 Ct. Cust. Appls. 52, T.D. 32316.

The 1890 act gave an importer the right of appeal if "dissatisfied" with the collector's decision. In the cited cases, the dissatisfaction was with a rate believed to be too low. The Board of General Appraisers assessed a higher rate, and the Government appealed to the Court of Customs Appeals, contending that the importer may not appeal where he has suffered no pecuniary loss.

Pointing out, in the *Schwartz* case, that the statute gave the importer the right of appeal from the collector's decision if the importer was *dissatisfied* with the decision, and after thorough review of prior decisions, the appeals court affirmed the decision of the board, assessing the *higher* duty rate that was claimed.

In some of the decisions reviewed, the board had expressed doubt as to the right of importers to seek a *higher* duty rate than that which was assessed. On this subject, the court, in the *Schwartz* case, *supra*, said:

> The decisions of the board above cited expressed doubt as to the right of importers to appeal from a ruling of the collector assessing too low a duty or admitting to free entry merchandise which was lawfully dutiable, but this doubt was resolved by the board in favor of the importers, and their claim to an appeal was sustained. And notwithstanding the reported decisions allowing such appeals no amendment appeared in any of these enactments designed to change the rule. It is perhaps permissible to say that the very fact that the board had expressed doubt concerning the ruling in question would tend the more certainly to direct legislative attention to the subject upon a reenactment of the administrative act. In all kinds of legislation substantial weight is given to such implied legislative adoption of judicial interpretations of preceding statutes, and in tariff legislation that rule must of necessity be given unusual force. It may fairly be said, therefore, that the courts adopted the broader interpretation for the phrase "if dissatisfied," and Congress approved such interpretation by its subsequent failure to change the construction upon which it was founded.

> These considerations lead the court to the conclusion that the importers in this case were within their rights when they protested against the collector's classification; and that the board was within its jurisdiction when it sustained their protest. [Pp. 30, 31.]

Similarly, we are of opinion that substantial weight should be given to the language Congress chose, in section 516(b), to express its intent,

and that we should assume that Congress was aware of prior judicial interpretation, in tariff cases, of the term "if dissatisfied."

While the right to protest that is conferred by section 516(b) is called, familiarly, an American manufacturer's protest, the fact is that the right is not confined to Americans of the class of manufacturers, but is given also to those of the class of producers and of the class of wholesalers. Whether a plaintiff is within a particular class on which the right is conferred, is properly matter for proof on trial. Here our inquiry is as to whether facts have been alleged sufficient to show jurisdiction. We find that they have been alleged.

Defendant's motions to dismiss protests 63/17422 and 63/17423 are denied for the reasons we have stated.

Schedule the protests on the October 1964 calendar of the third division, in New York, for trial.

So ordered.